# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2024-KA-01050-SCT

*UNDRA WILLIAMS, JR. a/k/a UNDRA WILLIAMS*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/28/2024 |
| TRIAL JUDGE: | HON. JAMES T. KITCHENS, JR. |
| TRIAL COURT ATTORNEYS: | JOSHUA EDWARD CLEMONS |
| | BENJAMIN DAVID LANG |
| | SCOTT WINSTON COLOM |
| COURT FROM WHICH APPEALED: | LOWNDES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: JUSTIN TAYLOR COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ASHLEY LAUREN SULSER |
| DISTRICT ATTORNEY: | SCOTT WINSTON COLOM |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 01/29/2026 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**ISHEE, JUSTICE, FOR THE COURT:**

¶1.     On January 26, 2024, a Lowndes County Grand Jury indicted Undra Williams on one count of first-degree murder and four counts of aggravated assault.  The case proceeded to trial, and the jury convicted Williams of first-degree murder and three counts of aggravated assault.[1]  Williams was sentenced to life imprisonment for murder and three consecutive twenty-year terms for aggravated assault.  His post-trial motion was denied.  Williams timely

---

[1] At the State's request, the fourth count of aggravated assault was retired to the files.

appealed.

¶2.     Williams argues on appeal that his convictions are against the overwhelming weight of the evidence.  For the reasons discussed below, this Court affirms Williams's convictions.

**FACTS AND PROCEDURAL HISTORY**

¶3.     On May 26, 2023, at approximately 10:50 p.m., Williams entered the Inferno Sports Bar and Nightclub in Columbus, Mississippi.  Surveillance footage captured his movements throughout the evening.  Williams was dressed in an orange-and-blue outfit.  After spending a few minutes inside, he left the club and later returned around 11:45 p.m.

¶4.     Once back inside, Williams approached Devan Thompson, and the two exchanged words.  According to eyewitness Ashley Miller, Thompson rebuffed Williams's attempt to speak to him, saying words to the effect of "I don't f*** with you like that."  Williams then walked away but soon returned, lifted his shirt, drew a gun, and shot Thompson multiple times.  Miller heard approximately eight gunshots and stated that Williams calmly walked out of the bar afterward.  Miller testified that she was friends with Thompson and knew Williams by his nickname, Pot.  She also identified Williams in the surveillance video and in court.  Miller admitted consuming two alcoholic drinks that night.

¶5.     Crystal Owens testified that she had known Williams for eighteen years and that she was at Inferno with Thompson on the night of the shooting.  She observed Williams approach Thompson and at some point saw Williams's arm extended in Thompson's direction as gunshots rang out, although she never saw a gun.  Owens later identified Williams on the surveillance footage and in court.

2

¶6. Empress Shirley testified that she "knew of" Williams and saw him at Inferno that night. When gunfire erupted, she dove to the side of the DJ booth and felt pain in her foot, later learning that a bullet fragment had lodged in her foot. She identified Williams from the surveillance video as wearing orange and blue and testified that she was "very confident" about her identification.

¶7. Nakita Chandler was with Shirley that night and also suffered a gunshot wound to her arm that required surgical removal of the bullet. She identified both Thompson and Williams from the surveillance video but did not actually see the shooting occur. Chandler testified, however, that she personally knew Williams and was "one hundred percent" sure that Williams was the shooter in the video.

¶8. Benethia Gibbs testified that she saw Thompson enter Inferno but did not see Williams in person that night. But she later identified Williams as the shooter when shown the surveillance footage.

¶9. Roderick Williams testified that he was struck in the right arm by a stray bullet. He also testified that he did not know Williams personally. He heard Thompson tell someone to "leave him alone" immediately before the gunfire began.

¶10. Police recovered nine 9 mm shell casings from the crime scene, all of the same brand and all fired from the same FC 9 mm Luger. Several projectile fragments were also collected. But no weapon was located near Thompson's body or recovered from the scene. A Smith & Wesson M&P 9 mm pistol was later submitted to the Mississippi Crime Laboratory, but testing excluded it as the weapon that fired the recovered casings.

¶11. Dr. Mark LeVaughn testified that Thompson suffered five gunshot wounds—two to the chest, causing fatal internal bleeding, and three to the upper thighs. The cause of death was multiple gunshot wounds; the manner of death was homicide.

¶12. Williams turned himself in two days later, on May 28, 2023. The firearm used in the shooting was never recovered.

¶13. At the close of trial, the jury found Williams guilty of first-degree murder and three counts of aggravated assault. Williams subsequently filed a motion for judgment notwithstanding the verdict, or, alternatively, for a new trial. The circuit court denied Williams's motion, and he appealed.

## DISCUSSION

¶14. Williams contends that unreliable eyewitness testimony and a lack of physical evidence rendered the jury's verdict contrary to the overwhelming weight of the evidence. The record decisively undermines Williams's claim. "A motion for a new trial simply challenges the weight of the evidence. The Supreme Court will reverse the lower court's denial of a motion for a new trial only if, by doing so, the court abused its discretion." *Burden v. State*, 347 So. 3d 174, 177 (Miss. 2022) (internal quotation mark omitted) (quoting *Daniels v. State*, 107 So. 3d 961, 963 (Miss. 2013)). In reviewing a challenge to the weight of the evidence, we must "view the evidence in the light most favorable to the verdict and disturb the verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Little v. State*, 233 So. 3d 288, 289 (Miss. 2017). This Court does not reweigh evidence, assess witness credibility,

4

or resolve factual disputes. *Id.*

¶15.    Contrary to Williams's claim, the State presented compelling evidence of his guilt. Regarding the murder conviction, Williams argues that the State failed to establish the element of deliberate design. *See* Miss. Code Ann. § 97-3-19(1)(a) (Rev. 2020). But the law permits deliberate design to be inferred from the use of a deadly weapon. *Beasley v. State*, 136 So. 3d 393, 401 (Miss. 2014). Whether a deadly weapon existed is a factual question for the jury to determine. *Id.* Here, one witness saw Williams approach the victim and raise his arm; the witness then heard gunshots. Another witness heard Williams and Thompson arguing and saw Williams draw a firearm. Multiple witnesses identified Williams as wearing distinctive orange-and-blue clothing, which is consistent with surveillance footage showing him at the scene. Finally, surveillance footage shows Williams approach the victim and shoot him repeatedly before exiting the club. The State proved deliberate design.

¶16.    As for the aggravated assault convictions, each victim testified in detail about the bullet wounds they sustained that night. Williams does not meaningfully dispute that he was the shooter. Instead, Williams seeks to undermine witness credibility by claiming they were intoxicated and that the scene was dark and chaotic. But several witnesses testified to consuming little or no alcohol that night. "[T]he jury is the judge of the weight and credibility of testimony and is free to accept or reject all or some of the testimony given by each witness." *Jones v. State*, 390 So. 3d 498, 503 (Miss. 2024) (alteration in original) (internal quotation marks omitted) (quoting *Meshell v. State*, 506 So. 2d 989, 992 (Miss. 1987)). Here, the jury was fully capable of assessing witness credibility, and the jury did so,

5

resolving all conflicts in the State's favor.

¶17. Williams also emphasizes the absence of physical evidence tying him to the crime. Mississippi courts have long held that a conviction may stand solely on credible testimonial evidence. *Brown v. State*, 130 So. 3d 1074, 1082 (Miss. 2013) (quoting *Graham v. State*, 812 So. 2d 1150, 1153 (Miss. Ct. App. 2002)). Here, eyewitnesses placed Williams at the scene, saw him draw a firearm, and heard shots fired. Video evidence from multiple angles further corroborated the eyewitness testimony. Accordingly, we find that this issue is without merit.

## CONCLUSION

¶18. For the reasons stated above, we find that Williams's convictions were not against the overwhelming weight of the evidence. Therefore, we affirm Williams's convictions and sentences.

¶19. **AFFIRMED.**

**RANDOLPH, C.J., KING AND COLEMAN, P.JJ., GRIFFIS, SULLIVAN AND BRANNING, JJ., CONCUR.**